UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

RICARDO DELGADO,                )
                                )
            Plaintiff,           )
                                )
      vs.                        )         06 C 2107
                                )
CERTIFIED GROCERS MIDWEST,       )
                                )
            Defendant.           )

## MEMORANDUM OPINION

CHARLES P. KOCORAS, District Judge:

This matter comes before the Court on Defendant Certified Grocers Midwest's ("Certified Grocers") motion for summary judgment. For the following reasons, summary judgment is granted in favor of Certified Grocers.

## BACKGROUND

In assembling the recitation of material facts relevant to our decision, we have disregarded any alleged facts or purported denials that are unsupported by the record or do not comply with Local Rule 56.1. *See Brasic v. Heinemann's Inc.*, 121 F.3d 281, 284 (7th Cir. 1997).

Plaintiff Ricardo Delgado was hired by Certified Grocers in the summer of 2000 as a temporary employee. By August, Certified Grocers had offered him a regular full-

time position as a Warehouse Picker in the Perishables Department, a union position that was governed by a collective bargaining contract. In this position, Delgado was responsible for filling orders in the dairy, freezer, produce, and meat sections of the department, all of which are refrigerated and/or cold. In order to fill orders, Delgado had to lift items weighing between 1 and 100 pounds, from bins anywhere from 5 inches to 6 feet off the floor, and then place those items on a pallet and shrink-wrap the pallet.

Delgado first injured his shoulder at work on November 1, 2001. Certified provided Delgado with an eight-week leave of absence and two months of light duty upon his return. Delgado was told by his union stewards that the collective bargaining agreement provided for only two months of light duty, after which an employee would be sent home until he received a full release. Certified provided Delgado with another leave of absence from February 13 to October 13, 2002, during which Delgado received benefits, health insurance, and temporary total disability benefits. Delgado returned to work on full duty with no restrictions on October 14, 2002.

On June 11, 2003, Delgado re-injured his shoulder but remained on full duty without restrictions until August 21, 2003, when his doctor placed him on light duty with certain lifting restrictions. Certified provided light duty work for Delgado within

his restrictions through October 20, 2003, amounting to more than eight weeks of light duty.

Delgado had surgery on his shoulder on January 26, 2004, following which Certified provided him with a leave of absence until May 18, 2004, along with benefits, health insurance, and temporary total disability benefits. On May 18, 2004, Delgado returned to work with restrictions, and Certified Grocers provided him with light duty consistent with those restrictions. Ultimately, on October 8, 2004, Delgado's doctor determined he had reached "maximum medical improvement" and placed him on permanent restrictions consisting of no overhead lifting and no frontal plane lifting over 50 pounds. Certified provided him with light duty consistent with his restrictions through November 17, 2004. In November, Delgado noticed numbness, tingling, and swelling in his arm. His doctor diagnosed him with carpal tunnel syndrome unrelated to his shoulder injury and placed him on a leave of absence. Delgado saw several other doctors in February and April 2005, who advised him not to lift more than 50 pounds, lift overhead, carry more than 25 pounds, or work in refrigerated environments. These restrictions have never been lifted.

Delgado attempted to return to work in April 2005, but because of his permanent medical restrictions, Certified Grocers determined that Delgado was not eligible to continue working in his bargaining unit job and sent him home on April 15, 2005. Once Certified Grocers determined that Delgado could no longer perform the job of

Warehouse Picker, they provided him with vocational rehabilitation. Plaintiff never requested an accommodation, filed a grievance, or applied for any other openings at Certified Grocers.

Since his termination, Delgado has applied for jobs and attended job fairs. He has been offered several jobs but has not accepted those offers. From March 30 to May 19, 2006, Delgado worked for Adecco as a mover. He quit this job because he claims that Adecco required him to do work outside of his lifting restrictions and did not pay him in a timely fashion. Delgado filed a charge with the Illinois Department of Labor and was ultimately able to recover his back pay. Delgado claims that it is very difficult for him to find jobs on account of his 6th grade education; his job experience, which is limited to jobs requiring lifting; and his medical restrictions. However, he has been offered several jobs and has not accepted those jobs. All were either within his work restrictions or he did not inquire as to what the lifting and carrying requirements of the job would be.

Delgado is currently unemployed, attending school in order to obtain his GED, and searching for jobs. He lives with his wife and two children, one of whom is a minor. He cares for his minor child, getting him ready for school, preparing lunch, overseeing his activities and attending his basketball games and other events. He can take care of himself and walks to keep in shape. In addition, he does household chores such as cleaning the table, loading the dishwasher, driving his children places, and

playing with his children. Occasionally, he does the grocery shopping. He carries a backpack filled with schoolbooks to school but does not know if the bag weighs more than 25 pounds. His injury prevents him from doing maintenance work on the rental properties that he owns.[1]

Delgado filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 29, 2005[2], and upon receiving his right to sue letter, brought this suit, alleging that he was terminated on account of his

---

[1] In his deposition, Delgado testified that he does not know how to cook and does not own a vacuum cleaner. He testified that he does not sweep, make beds, or wash dishes but did not attribute these choices to his injury. When asked if there was anything he was unable to do now, either professionally or personally, that he had been able to do prior to his injury, he answered, "I don't know." In his post-deposition affidavit, Delgado claims that he does not do many household chores including vacuuming, sweeping, doing laundry, making beds, and grocery shopping because such activities require lifting and reaching that aggravates his shoulder injury and causes him pain. A party cannot create an issue of fact in order to avoid summary judgment by contradicting his own prior testimony. *Darnell v. Target Stores, Inc.*, 16 F.3d 174, 177 (7th Cir. 1994). Delgado's affidavit directly contradicts his deposition testimony and accordingly, we cannot credit these portions of his affidavit. Delgado does not supply any explanation for the difference between his deposition and his affidavit, and there is no indication from his deposition testimony that he was confused as to the questions he was being asked in the deposition and therefore did not clearly explain himself. *Piscione v. Ernst & Young, L.L.P.*, 171 F.3d 527, 532-33 (7th Cir. 1999).

[2] Certified Grocers filed a motion to dismiss based upon the alleged untimeliness of Delgado's EEOC charge, which we denied, holding that under the circumstances, an analysis of whether or not the EEOC charge was timely filed could not be adjudicated in a Fed. R. Civ. P. 12(b)(6) motion. Certified Grocers has not continued to protest the timeliness of the EEOC charge, so we presume that the charge was timely filed on December 29, 2005, as Delgado alleges.

disability in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq. ("ADA"). At the close of discovery, Certified Grocers filed the instant summary judgment motion.

## LEGAL STANDARD

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of demonstrating the absence of a genuine issue of material fact by specific citation to the record, at which time the burden shifts to the non-moving party to set forth specific facts showing that there is a genuine issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); rather, "[a] genuine issue exists when the evidence is such that a reasonable jury could find for the non-movant." *Buscaglia v. United States*, 25 F.3d 530, 534 (7th Cir. 1994). At summary judgment, we construe all facts and draw all inferences from the record in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## DISCUSSION

Delgado complains that Certified Grocers terminated him rather than accommodate his disability in violation of the ADA. The ADA prohibits employment discrimination against a qualified individual with a disability because of the disability of that individual. 42 U.S.C. § 12112(a). Discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an applicant or employee" unless the employer "can demonstrate that the accommodation would impose an undue hardship on the operation of the business." 42 U.S.C. § 12112 (b)(5)(A). In addition, discrimination includes "denying employment opportunities to an...employee who is an otherwise qualified individual with a disability, if such denial is based on the need of such covered entity to make reasonable accommodation to the physical or mental impairments of the employee or applicant." 42 U.S.C. § 12122(b)(5)(B).

The ADA's remedies are available only for discrimination against "qualified individual[s] with a disability." 42 U.S.C. § 12122(a); *Sutton v. United Air Lines, Inc.*, 527 U.S. 471 (1999). In other words, if Delgado is not disabled within the meaning of the ADA, he may not recover under the statute. *Williams v. Excel Foundry & Machine, Inc.*, 489 F.3d 309, 311 (7th Cir. 2007). Delgado can prove that he is disabled under the ADA by establishing that: 1) he has a physical or mental impairment

that substantially limits one or more major life activities; 2) he has a record of such impairment, or 3) he is regarded as having such an impairment by his employer. 42 U.S.C. § 12102(2)(A); *see Kampmier v. Emeritus Corp.*, 472 F.3d 930, 937 (7th Cir. 2007). An analysis of whether or not an individual is disabled under the ADA is made on a case-by-case basis. *Id*. at 938; *Toyota Motor Mfg., Kentucky, Inc. v. Williams*, 534 U.S. 184, 198 (2002). Delgado claims that his lifting restrictions "substantially limit" his major life activity of working, that Certified Grocers regarded him as being disabled, and that he is otherwise a qualified individual. We examine each of his claims in turn.

A. Impairment That "Substantially Limits" a Major Life Activity

Delgado claims that his shoulder injury and the restrictions it necessitates substantially limits him in the major life activity of working. Delgado's physicians have restricted him to lifting no more than 50 pounds, to carrying no more than 25 pounds, and from doing any overhead lifting or work in cold or refrigerated areas.

As the Supreme Court has explained, "merely having an impairment does not make one disabled for purposes of the ADA." *Toyota Motor*, 534 U.S. at 195. The requirement that the disability, to be recognized as such, must "substantially limit" a major life activity is a "demanding" standard. *Id*. at 197; *Scheerer v. Potter*, 443 F.3d 916, 919 (7th Cir. 2006). A disability that "substantially limits" a major life activity

is one that either leaves the individual unable to perform or significantly restricts the individual from performing a major life activity that the average person in the general population can perform. *Kampmier*, 472 F.3d at 937; see also *Toyota Motor*, 534 U.S. at 198; 29 CFR 1630.2(j)(l)(i)-(ii). The nature of the limitation is considered "in light of that which most people do in their daily lives, not with reference to a specific job." *E.E.O.C. v. Sears, Roebuck & Co.*, 417 F.3d 789, 801 (7th Cir. 2005); *see also Toyota Motor*, 534 U.S. at 201.

An individual who claims that he is substantially limited in the major life activity of working must show that his condition restricts him in his ability to perform a class of jobs or a broad range of jobs in various classes "as compared to the average person having comparable training, skills, and abilities." 29 C.F.R. § 1630(j)(3)(I); *Kupstas v. City of Greenwood*, 289 F.3d 609, 612 (7th Cir. 2005). The Supreme Court has emphasized that, assuming working can be considered a major life activity at all, a claimant must show "an inability to work in a 'broad range of jobs,' rather than a specific job." *Toyota Motor*, 534 U.S. at 200; *E.E.O.C. v. Schneider Nat., Inc.*, 481 F.3d 507, 511 (7th Cir. 2007). The Seventh Circuit requires that a plaintiff claiming an inability to work in a broad range or class of jobs must demonstrate that his impairment "substantially limits" employment generally, rather than simply precluding him from performing a "particular specialized job or a narrow range of jobs." *Id*.

(internal citations omitted). To do so, a plaintiff must present evidence of the number and type of jobs in his geographical area from which he would be excluded as a result of his impairment. *Id.*; 29 C.F.R. § 1630.2(j); *E.E.O.C. v. Rockwell Intern. Corp.*, 243 F.3d 1012, 1017 (7th Cir. 2001).

Delgado asks us to conclude that his lack of success in job hunting is due to his work restrictions, claiming that employers are generally unwilling to hire someone with work restrictions. While Delgado has not been inundated with job offers, he offers no evidence that he was turned down from a job because of his work restrictions. Delgado has appended a significant volume of papers to his response to Certified Grocers' summary judgment motion in support of his claim. These papers consist of fax cover sheets to various employers (only some of which contain any indication of the position for which Delgado applied), an offer of employment from DoubleTree Hotels as a Housekeeping Houseperson, several rejection letters, job advertisements, forms notifying Delgado that he had been selected to be interviewed, and Delgado's own notes from his job search. There is no information from which we could determine the number of jobs for which Delgado applied, whether he was qualified for the jobs for which he was applying, or the outcome of many of his applications.

Delgado's job history since his termination also contradicts his bare assertion that his work restrictions have prevented him from obtaining employment. He has

undergone vocational training, and through the vocational agency, obtained a job as a mover at Adecco. After he quit the job at Adecco, he has been offered at least two other positions - one as a forklift driver (a position he believed Certified Grocers should have transferred him to in order to accommodate his work restrictions) and one as a baggage handler. He did not accept either of these positions. It is inconsistent to claim both that one is substantially limited in the major life activity of working and yet at the same time accept another job and receive job offers for two more jobs. *See Moore v. J.B. Hunt Transport, Inc.*, 221 F.3d 944, 953 (7th Cir. 2000); *Heimann v. Roadway Express, Inc.*, 228 F. Supp. 2d. 886 (N.D. Ill. 2002).

Furthermore, he has provided no evidence that his inability to lift objects weighing more than 50 pounds, carry more than 25 pounds, or lift overhead means that he is excluded from a broad class of jobs available to a person of his skills and education. He has failed to provide the required evidence of the number and type of jobs in his geographical area from which he would be excluded as a result of his impairment. *See* 29 C.F.R. § 1630.2(j); *Rockwell Intern. Corp.*, 243 F.3d at 1017. Apparently in an attempt to address this evidentiary requirement, Delgado's counsel proffered to this court an "admittedly unscientific" study that she conducted on the

Internet, arguing that Delgado could not afford to hire a vocational expert.[3]  This "study" consisted of counsel performing a job search on the website Manpower.com, searching for jobs that she considered Delgado eligible to apply for considering his experience and skills, and then eliminating the jobs that required lifting.  Counsel deemed Delgado qualified by virtue of his skills and experience for only 37 of the 444 jobs posted and then, after eliminating jobs requiring lifting, concluded that he was qualified only to perform 17 out of those 37 jobs.  Counsel admits that she is not an expert but claims that the "study" was an effort to demonstrate that Delgado was barred from a wide range of jobs.

This "study" is not admissible as evidence under Fed. R. Evid. 702.  Essentially, counsel offers this "study" to prove that Delgado is restricted to applying for only one third of the jobs available to a person of his skills and experience.  The foundation for her opinion is data gathered and analyzed by her, using criteria and standards she has developed - essentially, an expert opinion.  Not only did counsel not disclose this

---

[3] Counsel explains that Delgado could not afford to hire an expert to opine as to the state of the labor market and Delgado's employment opportunities.  This is not an acceptable excuse for a failure to present evidence, as means exist by which individuals with demonstrated financial need may appeal to the court for aid.  *See* 28 U.S.C. § 1915.  Furthermore, it does not excuse the lack of any information concerning the number and type of jobs available in the region, which this Court presumes may be available from public records and statistics kept by federal and state agencies in the course of their business.

- 12 -

"study" to Certified Grocers in discovery, but she admits that she is not qualified as a vocational expert and that her study is generally unscientific. Accordingly, we determine that this evidence is being offered as scientific evidence, in the form of statistics, but lacks any foundation at all which would assist a trier of fact in understanding the evidence or determining a fact in issue as required for admissibility under Fed. R. Evid. 702. Therefore, counsel's study and her accompanying affidavit are stricken from the record.

Accordingly, we conclude that Delgado has not presented evidence that his inability to lift more than 50 pounds, lift overhead, and carry more than 25 pounds has excluded him from a broad class of jobs. *See, e.g., Kupstas*, 398 F.3d at 613 (employee not disabled within the meaning of the ADA when he was unable to rake or shovel for more than 2 hours continuously or 4 hours in a day and could lift no more than 55-60 pounds); *Contreras v. Suncast Corp.*, 237 F.3d 756, 763 (7th Cir. 2001) (employee unable to lift in excess of 45 pounds for a long period of time, unable to engage in strenuous work, and unable to drive a forklift for more than four hours a day did not have an ADA-qualifying disability); *see also Williams v. Excel Foundry & Machine, Inc.*, 489 F.3d 309, 312 n. 2 (7th Cir. 2007); *Mays v. Principi*, 301 F.3d 866, 870 (7th Cir. 2002) (noting that many Americans are limited in their ability to lift heavy objects). Therefore, he has not shown that his lifting restrictions substantially limit him

in the major life activity of working such that he may be considered disabled under the ADA.

B. "Regarded as Disabled" by Employer

Even though Delgado may not have a disability as recognized by the ADA, he may show that his employer regarded him as disabled in order to come within the protections of the ADA. To show that his employer regarded him as disabled, he must show that either 1) the employer mistakenly believed that he has an impairment that substantially limits a major life activity or 2) the employer mistakenly believed that an existing impairment that is not really limiting does substantially limit a major life activity. *Cassimy v. Bd. of Educ. of the Rockford Public Schools, Dist. #205*, 461 F.3d 932, 937 (7th Cir. 2006). Simple awareness does not equate to a belief of a substantially limiting condition. *Id*. As the Seventh Circuit has explained, "If the condition that is the subject of the employer's belief is not substantially limiting, and the employer does not believe that it is, then there is no violation of the ADA under the 'regarded as' prong of the statute." *Id*. at 938 (quoting *Mack v. Great Dane Trailers*, 308 F.3d 776, 782 (7th Cir. 2002)).

Certified Grocers argues that it did not regard Delgado as having a disability that substantially limited his ability to work, pointing to the vocational training it offered Delgado as evidence of its faith that Delgado could find alternate employment.

Furthermore, Certified Grocers argues that it recognized only that Delgado could not perform a specific job - warehouse picker - and for that reason Delgado was fired. However, Delgado claims that Certified Grocers regarded him as disabled because he was fired pursuant to a policy under which employees who are deemed permanently restricted are automatically fired (a policy Delgado terms a "100% rule"). Delgado cites a Sixth Circuit case, *Henderson v. Ardco, Inc.*, 247 F.3d 645 (6th Cir. 2001), for the proposition that one may infer, from an employer's 100% healed rule, that the employer regards the employee as barred from a broad class of jobs. Further, Delgado cites *Hendricks-Robinson v. Excel Corp.*, 154 F.3d 685 (7th Cir. 1988) for the proposition that a 100% healed rule is a violation of the ADA.

Delgado's arguments are more properly addressed to his employer's actions in accommodating him, rather than to Certified Grocers' belief concerning the nature of his impairment. *Henricks-Robinson's* analysis of 100% healed rules simply does not apply to this case, since in Henricks-Robinson, the parties had stipulated that the employees were "qualified individuals with disabilities" under the ADA. *Hendricks-Robinson*, 154 F.3d at 692. In that case, the Seventh Circuit expressly noted that the issue of the employees' disabilities was not before it and that its analysis for the purpose of the ADA began with an examination of the employer's accommodation efforts. *Id*. Therefore, the court discussed the employer's policies in the context of

whether or not the employer failed to accommodate their employees, not whether or not a 100% healed rule is any reflection upon the employer's beliefs concerning their employees' disabilities. Furthermore, the inference drawn by the Sixth Circuit in *Henderson* is equally as inapplicable to the facts of this case; in *Henderson*, the plaintiff's disabilities, which including restrictions on lifting and bending, were more extensive, and the stated reason of the employer in refusing to consider plaintiff for any position in the factory was more encompassing than the actions of Certified Grocers in this case. In fact, in *Henderson*, the court recognized that " if the employer had only a set of relatively physically demanding jobs available and prevented a plaintiff from working these jobs, the employer would not necessarily be 'regarding' the plaintiff as disabled." *Henderson*, 247 F.3d at 653 n. 6.

In the Seventh Circuit, the fact that an employer believes that its employee cannot perform a specific job is not evidence of a general belief that the employee is unable to work in a broad class of jobs. *Kupstas*, 398 F.3d at 615. At most, the evidence shows that Certified Grocers believed that Delgado's lifting restrictions prevented him from working in their refrigerated warehouse and that their contract with Delgado's union prevented them from transferring him elsewhere in the company, rather than any belief on their part that Delgado was incapable of working generally. In fact, Delgado admits that his permanent restrictions prevent him from performing

the essential functions of his position as a warehouse picker. Accordingly, we find that Delgado has not presented any evidence that Certified Grocers believed he was substantially limited in his ability to work in a broad class of jobs or that he had a disability under the ADA.

C. A "Qualified Individual"

The ADA provides protections only for "qualified individual[s] with a disability," which is defined in the statute as "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." An employee who cannot perform the essential functions of the job, even with reasonable accommodation, is not a "qualified individual" under the ADA. *Rooney v. Koch Air, LLC*, 410 F.3d 376, 382 (7th Cir. 2005). Delgado has admitted that, at the time of his termination, he could not lift the 100 pounds required of a Warehouse Picker, could not work in cool temperatures in the warehouse, and could not do the overhead lifting required of a Warehouse Picker. Thus, regardless of whether or not Delgado's impairment rises to the level of a disability as recognized by the ADA, he is not a "qualified individual" under the statute because he has conceded that he could not perform the essential functions of his position and that there is no accommodation that exists that would help him to perform the functions of his job. Accordingly, the protections of the ADA are not available to him.

## CONCLUSION

For the foregoing reasons, Certified Grocers' motion for summary judgment is granted, and judgment is entered in its favor.

/s/ Charles P. Kocoras
Charles P. Kocoras
United States District Judge

Dated:   August 16, 2007